JANET DUPREE KEW, Plaintiff-Appellee, v. LELAND O. KEW, Defendant-Appellant.

Third District   No. 3—89—0093

Opinion filed May 25, 1990.—Rehearing denied July 5, 1990.

Herring & Hoehne, of Peoria (William H. Herring, of counsel), for appellant.

Janssen, Maher, Wertz & Miller, of Peoria (Bruce R. Becker, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Leland Kew (the husband), appeals from the provisions classifying and dividing property and from the provisions for maintenance to be paid to the plaintiff, Janet Kew (the wife), rendered by the circuit court of Peoria County in its judgment of dissolution of marriage. The issue we address on appeal is whether the trial court erred in finding a pension annuity to be marital property. We affirm.

The parties were married in North Carolina in 1973. At the time, the husband was 45 years old and worked as a landscape architect in Raleigh, North Carolina. The wife was 38 years old and worked as a registered nurse, also in Raleigh.

Prior to the marriage, the husband worked for the Pleasure Drive and Park District of Peoria (the park district) from June 1954 to February 1960, during which time he and the park district contributed to the Illinois Municipal Retirement Fund (the fund) (Ill. Rev. Stat. 1987, ch. 108½, par. 7—101 et seq.). The fund is designed to provide benefits to the participating employee, or the family of such employee, in the event of death, disability, or retirement of the employee. Upon leaving park district employment in 1960, the husband withdrew the approximately $2,000 in contributions he had made to the fund. Ac-

cording to section 7—169 of the Illinois Pension Code (the Code) (Ill. Rev. Stat. 1987, ch. 108½, par. 7—169), the husband could later reinstate the service credits earned from this period of employment if he were to be rehired by a participating employer, work two years, and repay (with interest) the previously withdrawn contributions.

The parties subsequently moved to Peoria in June 1979, where the husband resumed employment with the park district. In January 1987, the husband and wife agreed to contribute $8,144.62 in marital funds to reinstate the service credits earned during the husband's earlier employment with the park district. The parties contributed the marital funds so that the husband's retirement check would increase from approximately $800 per month to $1,300. The surviving spouse's annuity would also be enhanced, since its monthly payments would be a certain fraction of what the husband's retirement annuity payments would have been. See Ill. Rev. Stat. 1987, ch. 108½, par. 7—156.

The husband retired from his position at the park district on June 1, 1987, at the age of 59, and began to receive retirement annuity payments thereafter. Pursuant to section 7—154(2) of the Code (Ill. Rev. Stat. 1987, ch. 108½, par. 7—154(2)), upon the husband's retirement the surviving spouse's annuity became vested in the wife whether or not she remained married to the husband.

On January 20, 1988, the wife filed for dissolution of marriage. At trial, the parties offered a stipulation of the present values of the retirement annuity and of the surviving spouse's annuity. The parties stipulated that the present value of the husband's retirement annuity was $134,750.27 and the present value of the surviving spouse's annuity was $86,162.58. The parties based these calculations on actuarial computations. In the property disposition, after considering the stipulation, the trial court rejected the stipulated value of the surviving spouse's annuity, finding it to be speculative. The court attached no value to the surviving spouse's annuity but awarded it to the wife. The court found the husband's retirement annuity to be marital property. The court, seeking to divide the marital property nearly evenly, ordered the husband to pay the wife half of the husband's retirement annuity each month for so long as they both live. The court also ordered the husband to pay maintenance to the wife for a 14-month period. The court, however, retained jurisdiction to review that order.

On appeal, the husband contends that the parties made the $8,144.62 contribution of marital property to the park district in order to reinstate a nonmarital asset, the pension benefits. Thus, according to the husband, the trial court erroneously classified the pension as being entirely marital property. The evidence indicates that the par-

ties jointly decided to pay the $8,144.62 to the park district and that said money constituted marital property. The only question, then, is whether the pension is a marital asset. We conclude that it is.

■ Initially, the husband suggests that the trial court was bound to abide by the parties' stipulation regarding the present values of the pension. The trial court has the discretion to determine the validity and reasonableness of a stipulation. (*Krotke v. Chicago, Rock Island & Pacific R.R. Co.* (1974), 26 Ill. App. 3d 493, 327 N.E.2d 212.) Accordingly, under these circumstances, we find the trial court did not abuse its discretion.

■ Section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) requires a court to classify property as either marital or nonmarital in order to assign or divide it upon a marriage dissolution. (Ill. Rev. Stat. 1987, ch. 40, par. 503.) As a general rule, under section 503(b) of the Act, all property acquired by either spouse after the marriage, but prior to a judgment of dissolution, is presumed to be marital property. (Ill. Rev. Stat. 1987, ch. 40, par. 503(b).) Here, the husband contends that the contribution of marital property to "reinstate" his pension benefits constitutes a marital contribution to the nonmarital estate. The wife's surviving spouse's annuity, the husband suggests, is an item of property contributed from the nonmarital estate to the marital estate. Therefore, the nonmarital property (pension) retains its character as nonmarital property, but a right to reimbursement arises in favor of the marital estate to the extent that said contribution can be traced and proved by clear and convincing evidence. (See Ill. Rev. Stat. 1987, ch. 40, par. 503(a)(7).) This contention, however, is meritless for we find the parties made the contribution of marital property in order to purchase a marital asset, namely, the pension.

In the case *sub judice*, the husband withdrew the contributions he made to the fund following his first term of employment with the park district. This amount, together with the accrued interest thereon, was repaid to the fund with marital property. We are not presented here with a case in which marital property is employed to benefit nonmarital property. The parties made a joint decision to use marital funds to purchase a marital asset.

The husband testified that the purpose of making the contribution to the fund was to "buy back into it." We note that "buying back into the fund" benefitted both the husband and wife. The parties made this decision in order to increase the husband's pension benefits and the wife's surviving spouse's annuity. As such, we do not find the surviving spouse's annuity to be an isolated, nonmarital contribution to

the marital estate.

■ The husband asserts that this court should calculate the portion of the annuity acquired prior to the marriage from that acquired after the marriage. This calculation would be made if this case concerned the commingling of nonmarital and marital property. The pension at issue here, however, uniquely provides the employee spouse the opportunity to reinstate service credits from his earlier employment. The husband and wife agreed to take advantage of this provision by contributing marital funds to the park district. Therefore, because marital funds were employed to purchase a marital pension annuity, the trial court did not have to apportion the nonmarital assets from the marital assets. We find the cases cited by the husband readily distinguishable. (See *In re Marriage of Hapaniewski* (1982), 107 Ill. App. 3d 848, 438 N.E.2d 466.) Accordingly, under these circumstances, the trial court properly found the pension annuity to be marital property.

■ The husband next asserts that the trial court abused its discretion in considering the value placed on the husband's pension and yet finding the value of the wife's surviving spouse's annuity to be speculative. It is well settled that a trial court has broad discretion in the valuation and subsequent distribution of marital assets. (*In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 478 N.E.2d 1068.) Absent an abuse of discretion whereby no reasonable man could adopt the trial court's position, a reviewing court will not substitute its judgment for the lower court's disposition in marital property matters. *In re Marriage of Mullins* (1984), 121 Ill. App. 3d 86, 458 N.E.2d 1360.

In the instant case, the trial court held that since the wife only receives the surviving spouse's annuity in the event she survives the death of her husband, her realization of any benefit from the surviving spouse's annuity is purely speculative and therefore no value is to be placed upon it. This court addressed a similar issue in *In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 442 N.E.2d 557.

In *Fairchild*, at issue, *inter alia*, was an employee spouse's pension benefits. There, the pension benefits had not yet vested for the husband was still employed. Notwithstanding this, an economist testified as to the accrued and vested value of the pension benefits based on actuarial principles. This court noted:

"A potentially unfair situation thus arises, as the employee spouse risks making a final division of property with the non-employee spouse based upon a fixed value of future pension/savings benefits which may, in fact, be valueless if the actuarial

assumptions for the hypothetical person are inapplicable to the very real person before the court." *In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 475, 442 N.E.2d 557, 560.

Similarly, in the instant case, the wife's surviving spouse's annuity benefits are valueless if the actuarial assumptions upon which the aforementioned stipulation is based do not apply to the wife. Therefore, it would likewise be unfair to include the wife's surviving spouse's annuity in the final disposition of property, for her benefit, if any, is based upon speculative, albeit actuarial, assumptions. *Fairchild*, 110 Ill. App. 3d 470, 442 N.E.2d 557.

Here, the trial court, while rejecting the actuarial valuations of the wife's surviving spouse's annuity, was cognizant of the potential unfairness of these valuations should the life expectancy assumptions prove to be incorrect. We conclude, therefore, that the trial court did not abuse its discretion in finding the wife's surviving spouse's annuity to be speculative.

The husband finally asserts that the trial court abused its discretion in dividing the marital property. In a dissolution proceeding, in determining whether the trial court abused its discretion in dividing property, the question is whether the trial court in the exercise of its discretion acted arbitrarily, without the employment of conscious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) The trial court in the instant case, when rendering its decision, properly considered the opportunity of each party to acquire future income, their respective ages and health, and divided the marital property accordingly. The discretion accorded the trial court in this case was not abused.

For these reasons, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

HEIPLE, P.J., and BARRY, J., concur.